HARRY L. ALLEN, as Trustee in Bankruptcy of the AMERICAN RAILWAY BROTHERHOOD ASSOCIATION, INC., Bankrupt, Appellant, v. CHARLES W. FINK, Respondent.

HARRY L. ALLEN, as Trustee in Bankruptcy of the AMERICAN RAILWAY BROTHERHOOD ASSOCIATION, INC., Bankrupt, Appellant, in Thirty-six Other Actions, v. F. R. DAVIDSON and Others, Separate Defendants. Respondents.

Fourth Department, January 7, 1925.

Costs — action by trustee to recover unpaid stock subscriptions — legal maneuvers by counsel resulting in confusion and no trial of issue for five years condemned — security for costs ordered — security returned on ground that service was too late — plaintiff's attorney ordered to personally pay costs — costs may be imposed under Civil Practice Act, § 1530 — fact that action might have been brought before justice of peace does not deprive plaintiff of just consideration of case — order denying motion to compel acceptance of undertakings for costs reversed — order requiring plaintiff's attorney to pay costs reversed.

The conduct of the attorney for the plaintiff representing a trustee in bankruptcy in actions to recover unpaid stock subscriptions, and the conduct of the attorney for the defendants, in carrying on various legal maneuvers for five years resulting in great confusion and the failure to try any of the actions, is condemned by the Appellate Division.

While the plaintiff's attorney could have been made to pay the costs of the actions under section 1530 of the Civil Practice Act for failure to give security ordered by the court, and the order requiring him to do so might have been made under other circumstances, the Appellate Division in the exercise of its discretion, reverses the order requiring the plaintiff's attorney personally to pay the costs, and reverses the order denying the application of the plaintiff's attorney to compel the defendants' attorney to accept the undertakings for costs served upon him.

The fact that the several actions were brought to recover small amounts representing the alleged unpaid stock subscriptions by the individual defendants does not deprive the plaintiff of a just and fair consideration of the case by the Appellate Division.

APPEAL by the plaintiff, Harry L. Allen, as trustee, in thirty-seven separate actions from an order of the Supreme Court, made at the Wayne Special Term and entered in the office of the clerk of the county of Steuben on the 17th day of August, 1923, requiring plaintiff's attorney to pay the costs in each of the above actions and the costs of motion; also from an order entered in said clerk's office on the 18th day of August, 1923, denying the plaintiff's motion to compel the acceptance of undertakings as security for costs in said action; also from an order entered in said clerk's office on the 17th day of June, 1924, denying the plaintiff's motion to compel the defendants to accept security for costs and for other relief;

also from an order entered in said clerk's office on the same day denying the plaintiff's motion for a reargument of the motion to compel the defendants to accept security for costs; also from an order entered in said clerk's office on the same day denying the plaintiff's motion for a reargument of a motion made by the defendants to compel plaintiff's attorney to pay costs; and also from an order made at the Monroe Special Term and entered in the office of the clerk of the county of Steuben on the 9th day of July, 1924, denying the plaintiff's motion to vacate the order denying his motion to compel defendants' attorney to accept security for costs, and to vacate the order requiring plaintiff's attorney to pay costs.

*John Griffin,* for the appellant.

*James O. Sebring,* for the respondents.

DAVIS, J.:

The three appeal books in these actions and another affiliated action, contain some twenty separate orders, from ten of which appeals have been taken and were presented at the same time. The orders represent decisions of various motions, and grant or deny relief asked. It will be unnecessary to make further descriptions of many of them, but we will discuss only those we deem important.

These actions were brought about March 26, 1919, by the plaintiff, the trustee of a bankrupt corporation, to recover for the benefit of the estate and the creditors certain unpaid stock subscriptions. The several defendants answered, denying some allegations in the complaint but chiefly asserting fraud and deceit as an affirmative defense and counterclaim. Issue was finally joined by the service of a reply about September 18, 1919.

The claims against the individual defendants were small, from $50 to $100. There seems to be no reason why at least one or two of the causes could not have been brought speedily to trial and a decision reached, settling the disputed issues. Such a course was not followed. At this time, five years after issue joined, no case has been tried. Indeed, the parties seem farther from a trial than they were at the beginning.

The reason is not far to seek. Instead of pursuing the obviously practical course of trying one or two test cases, the parties began making various legal maneuvers. The defendants' counsel first obtained an order *ex parte* requiring plaintiff to give security for costs. Then followed the most unusual and remarkable course of procedure we have ever known. Motion followed motion, made in all parts of the judicial district, and in one adjoining. A large number of appeals have been brought before this court. There

have been motions for reargument, to amend orders, to resettle orders, for stays of proceedings here and at Special Term. There have been applications in this court to dismiss appeals and for leave to appeal to the Court of Appeals; and at Special Term motions before one judge to vacate an order made by another judge. At times orders granted were not entered for months, and in some cases it would appear that copies were never served on the opposing attorney. We mention but a few instances which have tended to create great confusion where once there was the simplest proposition, so that it may readily be seen that if there has been error in the courts below, there has been ample reason for it.

In fact, the counsel themselves at times became greatly confused. Motions were made and granted dismissing three complaints for default, where there was no default. Motions were made for judgment on the answers because no replies had been served and a counter motion was made for leave to serve replies, when in fact the replies had been served more than a year before. A motion was made to amend *nunc pro tunc* an order vacated a year previously; and in this court a motion was made to dismiss an appeal already dismissed a short time before on the motion of the same counsel.

The affidavits used on the motions are redundant and contain many misstatements of fact, and are filled with careless and confusing errors. Attorneys are expected to show some coherence in pleadings and motion papers submitted to the court when seeking a decision on a question in dispute. There is a short and summary way of disposing of matters where the papers upon which relief is asked are by acts of counsel permitted to become so redundant and confused that it is practically impossible for the court to understand them. They may be stricken out or dismissed entirely. (*Gutta-Percha & Rubber Mfg. Co.* v. *Holman,* 150 App. Div. 678; *International Railway Co.* v. *Jaggard,* 204 id. 67.)

In what has been done to create the confusion here described only in part, both counsel have participated. We do not propose to determine their relative delinquencies. We condemn the conduct of both. We have been able, only by the exercise of great patience and industry, to determine, amidst this confusion, what relief was being sought, and what the fundamental rights of the parties are.

It might well be expected that under the circumstances the plaintiff's attorney would be zealous in relieving his client from the expense and trouble of being compelled to furnish security for costs to the amount of $250 in an action where judgment was demanded for not more than $100. His efforts were unsuccessful; and not having given security promptly, an order was made dis-

missing the complaints including, as we have said, three where security had been given (in that respect subsequently vacated).

It may be that his efforts to furnish security were not diligent; it may be true, also, that he was privy to the bringing of another action by creditprs, wherein it was sought to restrain prosecution of these actions, and thus obtain the same relief without giving security. The creditors' action failed in the purpose of halting proceedings in this action. Then the attorney attempted to vacate the judgments. He was permitted to do so conditionally, provided he gave security in ten days. Here we may say that the legitimate zeal of counsel came to an end. Having asked of the court a favor and obtained it, he appealed from the order granted. Without going into detail, the attorney then obtained different stay orders, some of which contained material omissions; one was vacated and one amended *nunc pro tunc*. Finally, months later, when the orders conditionally vacating the judgments were affirmed in this court, the attorney attempted to comply with that part of the orders which permitted him to give security, and served undertakings. These were returned by the opposing attorney, chiefly on the ground that they were served too late.

Since then the efforts of plaintiff's attorney have been mainly directed toward compelling acceptance of these undertakings. He made a motion for that purpose, claiming the stays had extended his time. Defendants' counsel moved before the same court for an order directing plaintiff's attorney personally to pay the costs. The plaintiff's motion was denied, the learned justice holding that a stay does not of itself enlarge the time given by statute or order in which an act must be done. It may or it may not, depending in part on the language of the stay and the situation of the parties. (See *Schermerhorn* v. *Van Valkenburgh*, 7 Cow. 519; *McGown* v. *Leavenworth*, 2 E. D. Smith, 24; *Georgia Lumber Co.* v. *Strong*, 3 How. Pr. 246.) We do not find it necessary to decide the question here, but will base our decision on broader grounds. It is well known in the profession that the safer practice is to provide in the stay order in definite terms that the time shall not run.

The defendants' motion was granted and plaintiff's attorney was directed to pay the costs forthwith. The amount of these costs in all the actions is from $3,000 to $4,000.

The principal questions here are whether these two orders shall stand.

The imposition of costs on an attorney who is not a party to an action is a disciplinary or punitive act. The statute provides (Civ. Prac. Act, § 1488) that the courts may exercise such power in certain cases; and they have inherent authority of punishment

and discipline of their officers, independent of statute. It is a discretionary power exercised chiefly in cases of misconduct, negligence or contempt. (*Cushman* v. *Brown*, 6 Paige, 539; *Schaughnessy* v. *Reilly*, 41 How. Pr. 382; *Matter of Kelly*, 62 N. Y. 198; *American Insurance Co.* v. *Oakley*, 9 Paige, 496; *Post* v. *Charlesworth*, 66 Hun, 256; *Beer* v. *Orthaus*, 128 App. Div. 920.)

No one is here seeking to punish the attorney for misconduct, rather he is being held to the statutory liability. (Civ. Prac. Act, § 1530.) His liability in cases where he has brought an action, where defendant is entitled to require security for costs, is not one depending on the discretion of the court, but is fixed by statute. He may relieve himself from such liability by filing and procuring the allowance of an undertaking. This the plaintiff's attorney attempted to do.

The law is not inexorable in all its judgments. The policy of the courts is to be humane and not unduly harsh and punitive in its treatment of suitors and attorneys who have made mistakes; and to look with tolerance upon errors and defects in pleading and practice if they may be rectified without affecting substantial rights of litigants. (Civ. Prac. Act, § 105.)

The plaintiff's attorney has been many times in this court. The actions he brought are apparently meritorious, though there may, of course, be equally meritorious defenses thereto. The fact that the attorney attempted with excessive zeal to circumvent his adversary and avoid immediate compliance with burdensome orders, is not sufficient reason why he should now be punished with such severity as his opponent relentlessly urges. Nor should the plaintiff, an officer of another court, be denied the right to attempt to collect assets for the benefit of creditors because his attorney misinterpreted the legal effect of orders or made misguided efforts to protect his client's rights. It is the general policy of the courts to permit actions to be determined by a trial on the merits wherever possible, and not to be disposed of by means of some sharp legal jugglery without trial. To that end there is given to courts a large discretion in the control of their own proceedings, in opening defaults in the furtherance of justice, even after judgment entered. (Civ. Prac. Act, § 108; *President, etc.*, v. *Holley*, 7 Cow. 514; *Hatch* v. *Central Nat. Bank*, 78 N. Y. 487; *Matter of City of Buffalo*, Id. 362, 370; *Gideon* v. *Dwyer*, 17 Misc. 233; affd., 7 App. Div. 608; *Security Bank* v. *Bank of Commonwealth*, 2 Hun, 287.)

Although the motion, in effect to open a default, made in the court below, was addressed to its discretion, it is appealable and we may exercise our discretion. We think it is properly exercised here. (*Security Bank* v. *Bank of Commonwealth*, *supra*, 290.) In

a case involving dilatory tactics where *bona fides* was less evident than here, we opened a default to permit a party to plead and have a trial on the merits. (*Powell* v. *Schoellkopf*, 197 App. Div. 471, 477.)

Nor is it sufficient reason to let matters stand as they are that in another action the same relief may be obtained. That may be a reason for the consolidation of the actions, but this plaintiff has the right to prosecute the actions he first brought.

Respondent's counsel urges that these are nothing but " Justice Court actions " and are entitled to scant consideration. We do not take that view. The Supreme Court is one of original jurisdiction where all cases of every description in law and equity may be brought. (N. Y. Const. art. 6, § 1; *DeHart* v. *Hatch*, 3 Hun, 375; *Matter of Steinway*, 159 N. Y. 250.) Justices' Courts are provided that persons may have a tribunal near at hand where a speedy and cheap remedy for minor grievances is furnished. (N. Y. Const. art. 6, § 17; Justice Court Act, art. 1; *People ex rel. Burby* v. *Howland*, 155 N. Y. 270, 276.) In some cases parties may elect in which court they will sue. In making choice, it often depends upon the nature of the action and the legal questions involved, rather than the amount at stake. We would scarcely expect this plaintiff, in view of the anticipated defenses, to bring these actions in a Justice's Court. But in any event, it is not our business to show preference between actions, whether the claims presented are large or small. All persons having grievances for which they seek remedy, have the right to a determination in the Supreme Court, subject only in some cases to be penalized in costs. (Civ. Prac. Act, §§ 1472–1475.) It is the duty of the courts to exercise the same patience and care in a case where the demand is small as where it is large, for it is likely that in the minds of the respective parties one action is as important as the other.

When plaintiff presented his undertakings to the court on the motion, we think their acceptance might well have been ordered and the judgments vacated. Realizing how annoying and perverse the attorney may have been, yet it seems to us now that the resulting punishment was too severe when such a heavy burden of costs was cast upon him. We prefer to think that he made an effort in good faith to comply with the orders when he learned that he could not vacate or modify them.

The orders denying plaintiff's motions to compel acceptance of undertakings and to vacate the judgments theretofore entered should be reversed and the motion granted with leave to plaintiff to serve new undertakings within ten days, if he so elects; and with leave to defendants to except to the sureties as provided by section 1526 of the Civil Practice Act; the orders wherein plaintiff's

attorney is directed to pay costs forthwith should be reversed and defendants' motion denied; the subsequent orders to vacate and for reargument should be reversed and the motions dismissed, without costs to either party.

HUBBS, P. J., CLARK, SEARS and TAYLOR, JJ., concur.

Order entered August 17, 1923, reversed, and motion denied, without costs of this appeal to either party.

Order entered August 18, 1923, reversed and motion granted, without costs of this appeal to either party, with leave to plaintiff to serve new undertakings within ten days, if he so elects, and with leave to the defendants to except to the sureties as provided by section 1526 of the Civil Practice Act.

Order entered June 17, 1924, denying plaintiff's motion to compel acceptance of undertakings for security for costs, reversed, and motion granted, without costs of this appeal to either party, with leave to plaintiff to serve new undertakings within ten days, if he so elects, and with leave to defendants to except to the sureties as provided by section 1526 of the Civil Practice Act.

Order entered June 17, 1924, denying reargument of motion to compel plaintiff's attorney to pay costs reversed, and motion dismissed, without costs of this appeal to either party.

Order entered June 17, 1924, denying reargument of motion to compel acceptance of undertakings for costs reversed, and motion dismissed, without costs of this appeal to either party.

Order entered July 9, 1924, reversed and motion dismissed, without costs of this appeal to either party.